IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EUGENE ALEXANDER DEY,

        Petitioner,               No. CIV-03-0883 LKK KJM P

        vs.

M. YARBOROUGH,

        Respondent.            FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner was convicted in the Superior Court of Sacramento County of: (1) transportation of methamphetamine; (2) possession of methamphetamine; (3) transportation of marijuana; and (4) possession of marijuana.  RT 440:3-441:13.  For count one, under California's "Three Strikes Law," petitioner was sentenced to twenty-five years to life imprisonment in the California Department of Corrections and Rehabilitation (CDCR).  RT 554:7-11.  Petitioner also was ordered to serve one year consecutive to that sentence based on California Penal Code, section 667.5(b).  RT 554:12-14.  Sentence on count two was stayed in light of the sentence rendered for count one.  RT 556:6-17.  Petitioner

/////

1  did not receive CDCR time for count three.  RT 556:18-22.  Sentence on count four was stayed

2  in light of the other sentences rendered.  RT 556:23-25.

3  I.  Background

4          Petitioner was found guilty following a jury trial.  After sentencing, petitioner

5  appealed to the California Court of Appeal.  The Court of Appeal summarized the facts

6  surrounding petitioner's convictions as follows:

> Defendant concedes on appeal that he was lawfully detained for
> investigation of a registration violation while driving his car during
> the early morning hours of September 20, 1998.  He also concedes
> that once highway patrol officers determined his passenger was a
> parolee subject to arrest for parole violations and observed the
> parolee under the influence of a stimulant and having access to a
> knife with a blade in excess of two inches, they could lawfully
> search the passenger compartment.  While doing so, the officers
> found a marijuana bud in defendant's day planner, whereupon they
> searched his trunk.  They found additional marijuana in the trunk.
> They then searched the engine compartment and found a scale and
> methamphetamine secreted in a flannel shirt between the headlight
> and the battery.  A search of defendant when he was in custody
> yielded additional methamphetamine and some money tucked into
> his underwear.

15  Lodged Document, Court of Appeal Opinion (Op.) at 2-3.  The Court of Appeal affirmed

16  petitioner's convictions and sentences.  Id. at 16.  Petitioner then filed a petition for review of the

17  appellate court's opinion in the California Supreme Court.  Petitioner's request for review was

18  denied.  After direct appeal, petitioner filed several applications for writ of habeas corpus in

19  California courts.  All of petitioner's requests were denied.

20  II.  Standard For Habeas Relief

21          An application for a writ of habeas corpus by a person in custody under a

22  judgment of a state court can be granted only for violations of the Constitution or laws of the

23  United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

24  /////

25  /////

26  /////

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1]  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show that he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

/////

---

[1]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . .  At best, it is constitutional dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

1  
2  
3  
4  
5  
6  
7

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

8   <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the

9   law set forth in Supreme Court cases, or unreasonably apply such law if the state court simply

10  fails to cite or fails to indicate an awareness of federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8

11  (2002).

12          The court will look to the last reasoned state court decision in determining

13  whether the law applied to a particular claim by the state courts was contrary to the law set forth

14  in the cases of the United States Supreme Court or whether an unreasonable application of such

15  law has occurred. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002), <u>cert</u>. <u>dismissed</u>, 538 U.S.

16  919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial

17  of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

18  must perform and "independent review of the record to ascertain whether the state court decision

19  was objectively unreasonable. <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). In other

20  words, the court assumes the state-court applied the correct law, and analyzes whether the

21  decision of the state court was based on an objectively unreasonable application of that law.

22          It is appropriate to look to lower federal court decisions to determine what law has

23  been "clearly established" by the Supreme Court and the reasonableness of a particular

24  application of that law. <u>See Duhaime v. Ducharme</u>, 200 F.3d 597, 598 (9th Cir. 1999).

25  /////

26  /////

1   III.  Ineffective Assistance Of Counsel

2          Petitioner asserts he was denied effective assistance of trial counsel in several

3   respects.  The Supreme Court has enunciated the standards for judging ineffective assistance of

4   counsel claims.  See Strickland v. Washington, 466 U.S. 668 (1984).  First, a defendant must

5   show that, considering all the circumstances, counsel's performance fell below an objective

6   standard of reasonableness.  Id.  To this end, the defendant must identify the acts or omissions

7   that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The

8   court must then determine whether in light of all the circumstances, the identified acts or

9   omissions were outside the wide range of professional competent assistance.  Id.

10          Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is

11   found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

12   result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a

13   probability sufficient to undermine confidence in the outcome."  Id.; see also United States v.

14   Murray, 751 F.2d 1528, 1535 (9th Cir. 1985).

15      A.  Failure To Litigate Motion To Suppress Competently

16          Petitioner argues that trial counsel was ineffective in failing to investigate the

17   circumstances surrounding the stop of his car and then litigate the motion to suppress

18   competently.  Specifically, he argues that defense counsel failed to obtain evidence showing that

19   his car registration was current and that the traffic stop was merely a ruse to search his car for

20   drugs.

21          1.  Background

22          California Highway Patrol Officer Roger Pierce was on patrol on September 20,

23   1998 around 3:35 a.m. when he saw a light blue Chevy Impala, license number 403 WNE, with

24   expired registration tags.  RT 8-9, 25.  As he watched, the car drifted back and forth in the lane

25   and its speed fluctuated between the maximum and a little less.  RT 9-10.  Pierce described the

26   /////

1   driving as erratic.  RT 34.  He "suspected the registration was expired . . . also suspected the

2   driver may be driving under the influence of something."  RT 10.

3          Pierce asked dispatch to run a check on the license plate; the dispatcher informed

4   him that the plate belonged to a white Chevy Camaro, which was not reported stolen.  RT 10-11,

5   33.  Even so, Pierce believed that the Impala may have been stolen.  RT 11.  The dispatcher also

6   told him that the car had been stored within the previous thirty days for registration violations; it

7   was because of this recent impoundment that information about the make and color of the car

8   was in the system.  RT 94.

9          As the Impala pulled over in response to the overheard lights, "the driver and

10  passenger seemed to be moving around inside . . . the passenger compartment."  RT 12.  When

11  the cars had stopped on the shoulder, petitioner, the driver, got out, even though Pierce had not

12  ordered him to do so.  Something fell on the ground and petitioner bent to retrieve it.  RT 12.  It

13  was the ignition switch for the car.  RT 13.  Pierce looked in the car and noticed a screwdriver in

14  the place where the ignition switch should have been.  RT 14.  Pierce determined that the

15  passenger, who appeared to be under the influence of a stimulant, was a parolee.  RT 15.

16         Pierce looked in the car for any weapons and for evidence of ownership.  RT 18.

17  He located the VIN and determined the license plates on the car were assigned to that VIN.

18  RT 19.  In a zippered day planner, he found a number of papers in petitioner's name, and a

19  marijuana bud, less than a gram of marijuana.  RT 20, 61, 90.  In the trunk, he found a medium-

20  sized baggy of marijuana and smaller baggies.  Finally, in the engine compartment, Pierce found

21  a large bag of methamphetamine along with a scale wrapped in a flannel shirt.  RT 20-21.  He

22  searched the engine compartment because he knew people sometimes transported drugs there and

23  because he intended to impound the car.  RT 83-84.

24         Petitioner testified his car had been impounded after someone used it during the

25  time he had notified DMV it was not going to be operated.  RT 162.  In August 1998, he went to

26  DMV, paid the fees and then got the sheriff's department to give him a vehicle release form.

1    RT 162.  After that, he paid the towing company, got his car, and returned to DMV for a three

2    day mover's permit to allow him to get a smog test.  RT 163.  When the car failed the smog test,

3    DMV gave him a temporary registration, good until the end of October, which he put in the rear

4    window.  RT 163-164.  He acknowledged, however, that his rear license plate did not have a

5    current registration sticker on it.  RT 165.

6            The court denied petitioner's motion to suppress, musing that the issues were

7    resolved on "who you do believe . . . .[a]nd frankly, Mr. Dey, you do not strike the Court as

8    believable in the testimony that you've given here."  RT 172.  The court found it difficult to

9    believe that the CHP officers would not notice a temporary registration sticker on the window

10   and also difficult to believe that DMV would give petitioner months to operate the car after it

11   failed the smog tests.  RT 173.  He also questioned why the defense failed to produce a cancelled

12   check to show that fees had been paid.  RT 173.  Ultimately, it found the search was a proper

13   inventory search, conducted in accordance with CHP's policy of impounding cars that had not

14   been registered for six months.  RT 174.

15           The next day, petitioner told the court he had concerns about trial counsel's

16   representation because counsel had not sent an investigator to secure evidence to buttress his

17   testimony.  RT 182.  Counsel responded:

18           . . . He informs me that he had a temporary registration and that it
             was all legitimate and there was something posted in the back of
19           his car, but he did not inform me of that until probably last night.

20           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

21           Mr. Dey pretty much concedes he didn't have the registration tag
             on the back of his license plate, which is required, and which
22           would be sort of a marker that a CHP officer – the omission of
             having such a thing would be something that would probably be a
23           legitimate reason for pulling Mr. Dey over no matter what he had
             on the back of his windshield.
24
             Once he is pulled over and shows up with an ignition switch in his
25           hand, there is probably sufficient information for a police officer to
             detain him, at least for a short period of time, to determine whether
26           he is the registered owner or in legitimate possession of the car,

                                                    7

because ignition switches normally don't fall out of cars when they're being operated . . . . legally.

Thereafter, I think the officers had the right to detain the passenger as they said. I'm conceding all of these things. I think the Court was accurate in saying the detention of the passenger was legitimate. Once they ascertained he was on parole, it seemed to me they had carte blanche to search the interior compartment of Mr. Dey's car.

So that Mr. Dey, on the other hand, wants me to investigate whether his car had been given a – I guess, an exception by the Department of Motor Vehicles and whether he could operate it legally and whether the initial stop was incorrect. But I said to him, once you have the omission, failure to have the tag on the license plate . . . a police officer is going to pull you over pretty much whenever they want on that.

So we have a legitimate disagreement on that. He wanted me to investigate it, and I said I don't think we need to investigate it. He brought this up last night and I couldn't think of a means to do that, really.[2]

RT 184-186. Later, counsel said that petitioner had paid him only about $700, "so I've done the case pretty much pro bono." RT 188. He also noted that petitioner did not tell him until the previous evening that he could explain how the drugs got into his car. Id.

Petitioner countered that when he saw the district attorney's opposition to the motion to suppress, he asked counsel to hire an investigator for the case. Id.

On direct appeal, appointed counsel conceded that Pierce had probable cause to detain petitioner to investigate the registration and petitioner's fitness to drive, but argued there was no probable cause to search the trunk and engine compartments of the car and no legitimate basis for an inventory search. Lodged Document, Opening Brief at 19-33. He also argued that petitioner's Fourth Amendment rights were violated when Pierce opened the briefcase found in the trunk and searched the engine compartment. Id. at 33-41. The Court of Appeal rejected these

---

[2] Petitioner testified and Pierce essentially admitted that Pierce used petitioner's cell phone during the encounter. Counsel explained he did not investigate this because the officer had admitted using the phone. He noted that whether or not Pierce used the phone had no impact on the sequence of events surrounding the traffic stop and search. RT 186.

1   claims, ruling that the discovery of the marijuana bud in the zippered day planner gave the officer

2   probable cause to search the trunk, which led to the search of the engine compartment.  Op. at

3   3-6.

4          While the appeal was pending, petitioner filed a petition for a writ of habeas

5   corpus in the superior court, arguing that counsel was ineffective for failing to investigate and

6   litigate adequately the motion to suppress, among other claims.  Lodged Document, Petition in

7   Case No. 00F07745.

8          The superior court denied the writ, finding petitioner had not presented

9   documentary evidence supporting his claims that counsel had not investigated adequately.  It also

10  reasoned:

11          Simply put, the suppression motion was properly denied and
            petitioner sets forth nothing . . . that could even potentially lead to
12          a different conclusion.  The officer was justified in making the
            initial vehicle stop, because the car had expired registration tags
13          and was weaving (Whren v. United States (1996) 517 U.S. 806;
            People v. Aldridge (1984) 35 Cal.3d 473, 478).  The officer was
14          justified in detaining petitioner in the police car because petitioner
            exited the vehicle holding the ignition to the car in his hand,
15          leading any officer to have a reasonable belief that the car may be
            stolen. . . . The officer then properly saw, in plain view, that there
16          was a screwdriver in place of the ignition, leading to further
            credence for a reasonable belief that the vehicle was stolen.  In
17          addition, the officer had already ascertained that the registration tag
            matched up with a different type of vehicle than was the car.
18          Together, these gave rise to probable cause to believe the car was
            stolen; as an instrumentality of a suspected crime, the car in its
19          entirety was then searchable. . . . The officer also saw a weapon, in
            plain view, in the passenger compartment.  Thus, the search of the
20          passenger compartment was justified on a separate theory as well.
            (Michigan v. Long (1983) 463 U.S. 1039 . . . .)  Further, the
21          passenger was a parolee who appeared to be under the influence,
            separately giving rise to probable cause to search the passenger
22          compartment for containers. . . . Defense counsel, under such
            circumstances, was not deficient in conceding that the search of the
23          passenger compartment was lawful, and petitioner presents nothing
            to show otherwise.  As to the search of the trunk and the engine,
24          again that there was probable cause to believe the vehicle was
            stolen gave rise to searching these parts of the car. . . . .  In
25          addition, weapons and drugs were found in the passenger
            compartment of the car, giving rise to probable cause to believe
26          that other parts of the car were carrying weapons and/or drugs as

9

1   well and thereby justifying a search of the remaining parts of the
    car. . . And, the evidence would have been inevitably discovered in
2   any event during an inventory search, as the officer had probable
    cause to arrest petitioner for driving a stolen vehicle as well as for
3   possession of illegal drugs; the passenger was a parolee properly
    arrested as well; since noone was left in the vehicle, and it was a
4   suspected instrumentality of crime, it was subject to being
    impounded and searched . . . . That petitioner might ultimately
5   have been able to show that the car was not in fact stolen, as he
    intimates in his petition but does not support by documentation,
6   would not have made a difference, because at the time of the stop
    the officer had probable cause to believe the car was stolen,
7   rendering the search and seizure valid.

8   Lodged Document, Order in Case No. 00F07745 (filed 10/11/00) at 2-3 (emphasis in original).

9       In the federal petition, petitioner alleges that counsel was ineffective for failing to

10  obtain evidence to show petitioner's car was validly registered on September 20, 1998.  He also

11  argues that counsel should have obtained copies of the police radio transmissions, which would

12  have shown this was a "whisper stop," a pretextual stop to allow authorities to search.  Pet.,

13  Mem. P. & A. (P. & A.) at 12-17 & Ex. E (Sacramento Bee article about whisper stops).  He

14  argues this is a logical scenario because the car previously had been searched and at the same

15  time the search was conducted on September 20, 1998, his motel room also was searched.  Pet.,

16  Ex. D at 1-3 (Dey Decl.); Traverse, Declaration of Eugene Dey (Dey Decl. II) ¶ 16.  Petitioner

17  has presented a copy of a July 9, 2002 print-out from DMV for license number 403WNE, which

18  says: "Reg valid from: 11/12/96 to 11/12/97" and "PNO valid from: 2/06/98."  Pet., Ex. J.  He

19  has not presented any information showing the car had a proper temporary registration on

20  September 20, 1998, even though, as he told the superior court, the car, stored with an uncle, has

21  "a red moving permit still in the window."  RT 501.

22      2.  Analysis

23      In Kimmelman v. Morrison, 477 U.S. 365 (1986), the Supreme Court examined

24  an ineffective assistance of counsel claim based on counsel's failure to file a motion to suppress.

25  The Court held that in addition to making the showing required by Strickland, a defendant must

26  satisfy additional requirements:

1       Where defense counsel's failure to litigate a Fourth Amendment
claim competently is the principal allegation of ineffectiveness, the
2       defendant must also prove that his Fourth Amendment claim is
meritorious and that there is a reasonable probability that the
3       verdict would have been different absent the excludable evidence
in order to demonstrate actual prejudice. Thus, while respondent's
4       Fourth Amendment claim is one element of proof of his Sixth
Amendment claim, the two claims have separate identities and
5       reflect different constitutional values.

6 Id. at 375.

7       Petitioner alleges that "the whole search was reminiscent of a predetermined effort

8 to search my car, motel room and person" and suspects that the encounter was the result of a

9 "whisper tip," in which "the CHP would work with other agencies of law enforcement and invent

10 the probable cause post-incident to search a vehicle." Dey Decl. at 2, 3. Petitioner alleges that

11 had trial counsel sought discovery of the radio transmissions from the CHP and the Roseville

12 police, these records would show that his car, previously involved in two drug arrests, was

13 targeted for a stop and search, with probable cause to be created later. P. & A. at 12-16. He also

14 argues that had counsel secured "easily obtainable" records showing the registration status of his

15 car, Pierce's testimony would have been undercut and the court would have suppressed the

16 evidence seized as the result of police misconduct. Id. at 9-10. Thus, his claims focus on what

17 he believes to be counsel's derelictions in attacking the initial stop of the car rather than the

18 subsequent search.

19       Petitioner has not "prove[n] that his Fourth Amendment claim is meritorious."

20 Law enforcement authorities may stop a car when

21       there is at least reasonable suspicion that a motorist is unlicensed
or that an automobile is not registered, or that either the vehicle or
22       an occupant is otherwise subject to seizure for violation of law. . . .

23 Delaware v. Prouse, 440 U.S. 648, 663 (1979). The Supreme Court has rejected the idea that an

24 officer's "ulterior motives" or "actual motivations" undercut the constitutional reasonableness of

25 traffic stops based on reasonable suspicion or probable cause. Whren v. United States, 517 U.S.

26 806, 811, 813 (1996). Thus, "the Fourth Amendment's concern with 'reasonableness' allows

certain actions to be taken in certain circumstances, *whatever* the subjective intent." Id. at 814.

Accordingly, if Officer Pierce had reasonable suspicion or probable cause to stop petitioner's car,

it does not matter if his "ulterior motive" or "subjective intent" was to search for drugs.

Accordingly, even had counsel obtained copies of law enforcement radio transmissions, it would

not necessarily have rendered the suppression motion meritorious if the traffic stop was

otherwise legitimate.

An expired registration tab on a car suggests that the driver is violating California

Vehicle Code § 4000 (a)(1), which requires a vehicle to be currently registered and/or California

Vehicle Code § 5204(a), which requires that "current month and year tabs shall be attached to the

rear license plate attached to the vehicle. . . ."  An officer seeing a car without a current tab has

reasonable suspicion to believe that one or both of the sections have been violated.  See People v.

Sanders, 38 Cal.4th 1129, 1135 (2006).

The Department of Motor Vehicles may issue temporary permits "when a

payment of fees has been accepted. . . ." but "[t]he permit shall be subject to such terms and

conditions and shall be valid for such a period of time as the department shall deem appropriate

under the circumstances."  Cal. Veh. Code § 4146; see also Cal. Veh. Code § 4606.  Moreover,

as petitioner argued below and argues in this court, he had recently retrieved his car from

impound, which would have been impossible had he not paid any delinquent registration fees.

Cal. Veh. Code § 22651(o)(1).[3]

---

[3]  Vehicle Code § 22651(o)(1):

> When any vehicle is found or operated upon a highway, any public lands, or an offstreet parking facility with a registration expiration date in excess of six months before the date it is found or operated on the highway, public lands, or the offstreet parking facility. However, whenever the vehicle is occupied, only a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, may remove the vehicle. For the purposes of this subdivision, the vehicle shall be released to the owner or person in control of the vehicle only after the owner or person furnishes the storing law enforcement agency with proof of

It is possible, however, that information about the renewed registration and any temporary operating permit had not been entered into any computer database.  People v. Saunders, 38 Cal.4th 1129, 1137 & n.1 (2006).  According to Pierce, the dispatcher did not mention either a temporary registration or an operating permit.  In addition, Pierce's understanding of the process was that when a car is stored because of registration violations, the owner has to bring proof that the fees have been paid or that other problems have been cleared up to the Highway Patrol Office in order to secure a release order for the owner to bring to the impound yard.  RT 100.  If the car has been impounded for other equipment violations, the DMV can issue a special one-day permit to allow the owner to take the car to be repaired.  RT 96-97, 100.  Evidence that petitioner had indeed paid the fees, whether by cancelled check or DMV records, would not necessarily have shown that the stop was a pretext: Pierce's belief in the limited nature of some permits after impound, supported by the fluid nature of the terms and conditions authorized by  California Vehicle Code § 4146, and the conceded absence of the current registration tab could be a reasonable basis for the initial stop of the car.  See Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990) (Fourth Amendment not violated when officers act on reasonable belief, even if belief is erroneous); United States v. Flores-Sandoval, 366 F.3d 961, 962 (8th Cir. 2004) (officer stopped car because he believed it lacked front license plate; in fact, license plate was obscured; no Fourth Amendment violation because officer reasonably believed there was no front plate); United States v. Dorais, 241 F.3d 1124, 1130-31 (9th Cir. 2001) (no Fourth Amendment violation when police stopped car after rental car company reported, erroneously, that the car was overdue); United States v. Garcia-Acuna, 175 F.3d 1143, 1146-47 (9th Cir. 1999) (a mistaken premise may be sufficient basis to stop a car if the officer does not know it is mistaken and is reasonable in acting upon that premise).  Counsel's assessment—that

current registration and a currently valid driver's license to operate the vehicle.

1  the lack of a current tab gave rise to reasonable suspicion– and his consequent determination that

2  investigation would not undercut the claimed reason for the stop was not outside the range of

3  competent assistance.  Counsel's evaluation was "a reasonable decision that makes particular

4  investigations unnecessary."  Strickland, 466 U.S. at 691.

5        Petitioner contends he had the temporary registration sticker in the back window

6  and argues that had his testimony on that point been supported, the outcome of the hearing would

7  have been different.  See United States v. Wilson, 205 F.3d 720, 723-24 (4th Cir. 2000) (stop

8  unreasonable when officer stopped the car because he could not see expiration date on temporary

9  sticker but had no other suspicion that car was unregistered); compare United States v. McSwain,

10  29 F.3d 558, 561 (10th Cir. 1994) (initial stop valid because officer could not determine whether

11  temporary sticker was valid; once he did so, purpose of stop was over); People v. Hernandez,

12  53 Cal.Rptr.3d 66 (2006), review granted, 56 Cal.Rptr.3d 471 (2007) (stop invalid when

13  temporary sticker appeared valid on its face).  As he did in the state courts, he has presented no

14  evidence showing the sticker was in fact displayed in his rear window and showed an expiration

15  date of October, evidence that was easily available to him even while he was representing

16  himself and seeking support for his motion for a new trial.  See RT 501 (petitioner told court the

17  sticker was still in the window of the car his uncle was storing for him), 508 (petitioner told court

18  he had "boxes of paperwork in my cell and cases, photos, just ready to go.").[4]

19        Accordingly, the state court's resolution of this question was not an unreasonable

20  determination of either the facts or the law.

21  /////

22  /////

23  /////

24  _____

25  [4]  There also was Pierce's suspicion that the car was stolen, based on the dispatcher's
information that plates were assigned to a different type of car than petitioner's.   The court will
not rely on this, however, because of petitioner's continued claim that the now-destroyed

26  dispatch tapes would have demonstrated this information had not been given to Pierce.

B.  Failure To Interview Witnesses

Petitioner contends trial counsel was ineffective in failing to interview his girlfriend, who would have said the drugs found in petitioner's underwear belonged to her and his mechanic, Ronnie Boise, who "was wanting to do the right thing in regards to accepting the blame for the drugs he placed under the hood of the vehicle."  Pet., Dey Decl. at 2; Traverse, Dey Decl. II ¶¶ 3, 20, 34.

The superior court rejected this claim:

> As for a failure to interview witnesses, petitioner states only that Ronnie Boise and Donna Johnson would have been willing to testify that he placed the drugs under the hood of the vehicle, and that Johnson also would have testified that she put drugs in petitioner's underwear.  However, petitioner fails to attach any affidavit from either person attesting to such. . . . Nor does petitioner claim they placed the drugs there without his knowledge and consent.  As such, even if affidavits had been attached, they would not have supported any claim by petitioner that he was unaware of the presence of drugs in a car that he was driving, or that he was not involved in the possession and/or trafficking of those drugs.  Nor would a claim that he was unaware of the drugs being in his underwear have been credible in any event, especially since the drugs were in a rock form and would have been noticed by the reasonable wearer.

Lodged Document, Order in Case No. 00F07745 (filed 10/11/00) at 3.

Although one of counsel's duties is investigation, petitioner cannot bear his burden of showing ineffective assistance of counsel by presenting "mere conclusory statements," United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984), but rather must tender affidavits from the witnesses counsel neglected to interview or call, showing the "helpful testimony for the defense" they could have presented.  Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001).  Petitioner's description of what these two witnesses would have said is not sufficient.

/////

/////

/////

15

C.  Failure To File "Pitchess" Motion

Petitioner contends counsel was ineffective in failing to file a Pitchess motion for disclosure of other incidents of misconduct from Officer Pierce's personnel records.  Pitchess v. Superior Court, 11 Cal.3d 531 (1974); see also Cal. Evid. Code §§ 1043-1045.

The superior court also rejected this claim, explaining:

> As for petitioner's claim that a Pitchess motion should have been made, petitioner fails to state what such a motion would have revealed and whether it would have made a difference in the outcome . . . . Petitioner does claim that the CHP was under fire for participating in a drug operation called "Whisper Tips," but again provides no reasonably available documentation on such operation. . . . Further, any claim that police planted the drugs in the car would not have been believable in light of the fact that petitioner himself was found to have been carrying drugs on his person, hidden in his underwear, which he now claims was [sic] placed there by Donna Johnson, and in light of petitioner's further claim in this petition that Ronnie Boise and Donna Johnson, and not the CHP, placed the drugs under the hood that were found there.

Lodged Document, Order in Case No. 00F07745 (filed 10/11/00) at 3.

Although a Pitchess motion is a creature of state law, it implicates a defendant's due process right to receive exculpatory and impeachment evidence.  Harrison v. Lockyer, 316 F.3d 1063, 1065-66 (9th Cir.), cert. denied, 538 U.S. 988 (2003).  In Brady v. Maryland, 373 U.S. 83, 86 (1963), the Supreme Court recognized a prosecutor's obligation to reveal exculpatory evidence, whether substantive or for impeachment purposes, when such evidence is "material" to the defense.  To establish Brady violation, a habeas petitioner must show three things:  that the evidence was favorable to him, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the prosecution either willfully or inadvertently; and defendant was prejudiced by the non-disclosure.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  The same standard applies when a habeas petitioner challenges counsel's failure to make a Pitchess motion.  Osumi v. Giurbino, 445 F.Supp.2d 1152, 1163 (C.D. Cal. 2006).  Here, petitioner has failed to identify what evidence counsel could have obtained had he filed such a motion; he has not borne his burden of showing counsel's ineffectiveness.  Id.

IV.  <u>The Denial Of Post Trial Motions</u>

After the jury returned guilty verdicts, petitioner discharged counsel and elected to represent himself despite the court's offer to appoint new counsel to represent him.  RT 452.  He thereafter filed motions for the appointment of an investigator and a psychiatrist to assist him at the sentencing hearing, for discovery, and for a transcript.  CT 213-272.

The prosecutor explained that the tapes of the CHP and Roseville radio transmissions had been destroyed two months earlier in conformance with their policy; that Officer Penrose did not prepare a report; that any handwritten notes were destroyed after formal reports were prepared; and that he was still seeking reports or notes from two Roseville officers.  RT 481-483.  The court denied the bulk of the discovery request and petitioner's requests for a transcript and for the appointment of an investigator and a psychologist.  RT 472-475, 492, 496, 513-514.

Petitioner challenged these rulings on direct appeal, in vain:

> Over the course of a number of hearings and an ever-shifting series of arguments, defendant finally addressed the gist of his need for appointment of an investigator.  He had agreed with defense counsel that the only hope in the case was a successful suppression motion.  But since defendant had limited funds, defense counsel did not ever adequately investigate the actual registration status of defendant's vehicle on the evening of his arrest (to support defendant's testimony he had a temporary registration permit, which the court discredited in ruling on the suppression motion), nor did he seek evidence impeaching the highway patrol officer's asserted rationale of an inventory search pursuant to seizing a vehicle with a long-expired registration. . . . The court ultimately denied all the motions.  With respect to the motion for new trial, the court noted defendant's arguments all related to the issue of the car's registration, but even if resolved in his favor this would not have yielded an ultimate result in his favor because he didn't have a registration tag on the back of his license plate.
>
> On appeal, while admitting the denial of the other motions was probably within the superior court's discretion, defendant contends the refusal to appoint an investigator, in combination with the denial of these other motions, deprived him of due process.  He claims he adequately manifested the need for an investigator to establish that the articulated basis for the search of the trunk was mere pretext.  However, as we earlier concluded, the highway

17

1  patrol officer had probable cause to search the trunk.  These
2  matters are therefore immaterial on the issue of ineffective
   assistance because they did not prejudice defendant.

3  Defendant also claims on appeal he needed to investigate why
   defense counsel did not call defendant's mechanic as a trial
4  witness.  Defendant claimed before trial that the mechanic had
   placed the contraband in the engine compartment.  Noticeably
5  absent from defendant's argument in the trial court was any claim
   he could prove the contraband was owned by anyone else; thus we
6  will not consider the argument here.

7  Op. at 8-9.  In this court, he again argues that his rights to due process and equal protection were

8  violated when the court denied the motions for preparation of a transcript and the appointment of

9  an investigator and an expert witness.

10     A.  <u>Transcript</u>

11          Petitioner told the trial court that he needed the transcript because his own notes

12  were not extensive and he did not have the "actual details and the courtroom jargon and the oral

13  motions made and all of that."  RT 472.  The court denied the motion because it felt petitioner

14  wanted to go on a fishing expedition.  <u>Id.</u>

15          In <u>Britt v. North Carolina</u>, 404 U.S. 226, 227 (1971), the Supreme Court held:

16      the State must, as a matter of equal protection, provide indigent
        prisoners with the basic tools of an adequate defense or appeal,
17      when those tools are available for a price to other prisoners. While
        the outer limits of that principle are not clear, there can be no doubt
18      that the State must provide an indigent defendant with a transcript
        of prior proceedings when that transcript is needed for an effective
19      defense or appeal.

20  In <u>Greene v. Brigano</u>, 123 F.3d 917, 922 (6th Cir. 1997), the Court of Appeals found that even

21  though a defendant who represents himself on appeal "gives up many of the benefits associated

22  with the right to counsel," he nevertheless is entitled to a transcript to prepare his appeal.  In this

23  case, the trial court may have erred in denying petitioner's request for a transcript as an aid to

24  preparing his motion for a new trial.

25          Petitioner is not able, however, to demonstrate any such denial had a substantial

26  and injurious effect on his case.  The transcript ultimately was prepared for appeal and eventually

18

provided to petitioner; in fact, he attaches portions to the petition as exhibits.  Pet., Exs. F & I.

With transcript in hand, petitioner has not suggested what portions would have supported his

motion for new trial.  Compare Kennedy v. Lockyer, 379 F.3d 1041, 1055 (9th Cir. 2004),

cert. denied, 544 U.S. 992 (2005) (prejudice from denial of transcript shown when defense

counsel in second trial was not aware of important rulings about admissibility of gang evidence).

He has not demonstrated prejudice from the denial.

B. Investigator

Petitioner argues his rights were violated when the trial judge refused his request

for an investigator to gather evidence concerning the reasons for the stop and the timing of the

search of the car and his motel room, apparently to show Pierce had completed the search of the

car before undertaking an inventory.  RT 473, 502-504.  An investigator could help him

determine, he suggested, why trial counsel had not called his mechanic, Ronnie Boise, as a trial

witness.  He also sought the assistance of an investigator to interview witnesses for the

sentencing hearing.  RT 505.

Petitioner relies on Ake v. Oklahoma, to argue he had a right to ancillary services

for the preparation of the motion for a new trial.  In Ake, the Supreme Court held:

> when a defendant demonstrates to the trial judge that his sanity at
> the time of the offense is to be a significant factor at trial, the State
> must, at a minimum, assure the defendant access to a competent
> psychiatrist who will conduct an appropriate examination and
> assist in evaluation, preparation, and presentation of the defense.

470 U.S. 68, 83 (1985).

However, in Caldwell v. Mississippi, the Supreme Court suggested Ake should

not be read expansively:

> Petitioner also raises a challenge to his conviction, arguing that
> there was constitutional infirmity in the trial court's refusal to
> appoint various experts and investigators to assist him. . . .
> [P]etitioner also requested appointment of a criminal investigator, a
> fingerprint expert, and a ballistics expert, and those requests were
> denied. The State Supreme Court affirmed the denials because the
> requests were accompanied by no showing as to their

1    reasonableness. . . . . Given that petitioner offered little more than
undeveloped assertions that the requested assistance would be

2    beneficial, we find no deprivation of due process in the trial judge's
decision. Cf. Ake v. Oklahoma, 470 U.S. 68, 82-83, 105 S.Ct.

3    1087, 1096-1097, 84 L.Ed.2d 53 (1985) (discussing showing that
would entitle defendant to psychiatric assistance as matter of

4    federal constitutional law). We therefore have no need to determine
as a matter of federal constitutional law what if any showing would

5    have entitled a defendant to assistance of the type here sought.

6  472 U.S. 320, 323 n.1 (1985).  The Ninth Circuit has posited two views about the appointment of

7  an investigator.  In Williams v. Stewart, 441 F.3d 1030, 1053 (9th Cir.), cert. denied sub nom.

8  Williams v. Schriro, __ U.S. ___, 127 S.Ct. 510 (2006), the court noted that in "appropriate

9  circumstances" a court must provide an investigator to effectuate a defendant's right to the

10  effective assistance of counsel.  However, in United States v. Wilson, 690 F.2d 1267, 1271

11  (9th Cir. 1982), the court found a Sixth Amendment right to self-representation did not include

12  "further rights to materials, facilities, or investigative or educational resources that might aid self-

13  representation."  The Supreme Court adopted this latter view in Kane v. Garcia-Espitia:

14        *Faretta* says nothing about any specific legal aid that the State
owes a *pro se* criminal defendant. .The . . . court below therefore

15        erred in holding, based on *Faretta*, that a violation of a law library
access right is a basis for federal habeas relief.

16

17  546 U.S. 9, 10 (2006).  Assuming there is such a due process right to the appointment of an

18  investigator, petitioner has not shown it was violated, nor has he shown he was denied equal

19  protection.

20        In Williams, 441 F.3d at 1053, the court recognized that the appointment of an

21  investigator is "constitutionally necessary" only when such services are "required."  Here, the

22  state Court of Appeal found the search of the passenger compartment, trunk and engine

23  compartment were justified apart from Pierce's rationale of an inventory search.  Op. at 2-6.

24  Accordingly, there was no need for an investigator to explore the allegedly pretextual nature of

25  the inventory search, based on petitioner's cell phone records or towing company records.

26  Moreover, because the initial stop was justified by absence of a current registration tab, there was

1 no constitutional need for an investigator to explore the concept of whisper stops or the actual

2 registration status of the car.  See Whren, 517 U.S. at 811.  The one potentially viable area of

3 investigation was the existence of a temporary sticker on petitioner's car, but despite the fact the

4 car was in the control of his family, petitioner has never presented any evidence that such a

5 sticker existed.

6       Petitioner argues an investigator could secure evidence of petitioner's

7 rehabilitation, which would have been vital to his motion to strike one or more of his strikes.  Yet

8 petitioner fails to identify, except in fairly broad terms, the nature of such evidence.  Traverse,

9 Mem. P. & A. at 15 ("what was presented was not even the tip of the iceberg of what could have

10 been presented . . . ."; "petitioner wanted a plethora of mitigation evidence on the record. . . .").

11 These conclusory statements are insufficient to show an investigator was constitutionally

12 necessary.

13       Finally, petitioner argues the other pro se inmates with whom he had contact had

14 investigators appointed to locate and interview witnesses and to collect physical evidence.  Id. at

15 13.  He has offered his own statements, but no evidence that all other pro se inmates in the

16 Sacramento County Jail were afforded the services of an investigator.  This is inadequate.

17     C.  Forensic Psychologist Or Psychiatrist

18       Petitioner argues he was entitled to the appointment of a mental health expert

19 because "my knowledge of the case indicates that certain psychological/psychiatric issues are

20 relevent [sic] to this action."  CT 292.  At the hearing on the motion, petitioner argued that he

21 wanted a forensic psychologist to "make recommendations based on the type of crime–the nature

22 of the crime," in the way a probation officer would.  RT 513.  He continued that such an expert

23 could "make an accurate picture of why . . . the defendant would risk one's life behind drugs [sic]

24 in light of the penalties. . . ."  RT 514.

25      In Ake, the Court recognized a right to the appointment of a psychiatric expert for

26 the defense when issues of sanity will be important during the trial.  470 U.S. at 83.

1   "[P]sychiatric assistance is a contingent, not an absolute, right . . . ." <u>Gretzler v. Stewart</u>,

2   112 F.3d 992, 1001 (9th Cir. 1997).  The Fifth Circuit has held that this contingent right is not

3   triggered by a defendant's "*bare assertion of his addiction*. . . ." <u>Volanty v. Lynaugh</u>, 874 F.2d

4   243, 247 (5th Cir. 1989) (emphasis in original).  In this case, petitioner sought psychological

5   assistance, in essence, on the unadorned assertion of his addiction.  The state court did not apply

6   federal law unreasonably in rejecting this claim.

7   V.  <u>Disproportionate Sentence</u>

8              Petitioner asserts his sentence violates the Eighth Amendment because it is

9   disproportionate to his offense.  Petitioner raised this claim on direct appeal.  The California

10  Court of Appeal was the last court to issue a reasoned opinion with respect to petitioner's claim.

11  Op. at 15-16.  The Court of Appeal summarized petitioner's criminal history as follows:

12              . . . In 1984 (at the age of 18), [petitioner] participated in a robbery
            of a convenience store in which his accomplice used a sawed-off
13          shotgun.  Granted probation, he committed misdemeanor assault of
            a juvenile with a knife in 1986, misdemeanor reckless driving in
14          early 1987, and misdemeanor weapon possession in mid-1987.
            Several days later, police caught him in the act of burglarizing an
15          apartment; while on bail in 1988, he was arrested for another
            burglary, misdemeanor assault, and possession of
16          methamphetamine.  For the felonies, he received a 12-year prison
            sentence.  In 1994, he was paroled.  Arrested for misdemeanor
17          possession or marijuana in August 1996, he paid a fine.  Less than
            two months later, he was again arrested for possession of
18          methamphetamine and transportation of marijuana.  Although the
            prosecution dropped the charges after a successful suppression
19          motion, defendant's parole was revoked and he returned to prison
            from November 1996 to July 1997.  In September 1997, police
20          responded to a call from a person who believed defendant was
            dealing drugs.  They observed him loitering; an officer saw a
21          baggie with white powder in his pants.  Defendant resisted their
            efforts to arrest him and seize the bag.  He fled and managed to
22          discard the bag by the time they were able to take him into custody.
            Convicted of misdemeanor resisting arrest, he returned to prison
23          until May 1998.  Police arrested him again on September 8, 1998,
            about three weeks before the present offense, for driving under the
24          influence; a blood test revealed the presence of methamphetamine
            and possible marijuana use.

25  Op. at 11-12.  The court also identified more positive aspects of petitioner's character:

26

> As for defendant's personal characteristics, he obtained his GED certificate and an associate of arts degree while in prison from 1988 to 1994, during which time he was free of any discipline and had articles published in the *Christian Science Monitor*. On release (paroled at the lowest level of security, he continued his college studies (majoring in sociology) while running a construction business, his professors encouraging him to continue on to graduate school. According to defendant, he had been doing well until he had a relapse in drug use in 1996, an addiction he only recently acknowledged was a problem and for which he was now seeking help.

Id. at 12.

The Court of Appeal, citing Harmelin v. Michigan, 501 U.S. 957 (1991), found plaintiff's sentence does not violate the United States Constitution because petitioner's sentence is proportionate to petitioner's offense and criminal history.   Id. at 15-16.

In Lockyer v. Andrade, the Supreme Court found the following principle was clearly established within the meaning of 28 U.S.C. § 2254(d)(1) at the time petitioner's Eighth Amendment claim made its way through California courts:  a sentence can be grossly disproportionate to an offense.  538 U.S. 63, 72 (2003).  The Supreme Court also noted, however, that the precise contours of the "grossly disproportionate" principal are unclear and applicable only in the exceedingly rare and extreme case.  Id. at 73.

Petitioner asserts the Court of Appeal's opinion is contrary to and involved an unreasonable application of clearly established Supreme Court precedent.  Traverse, P. & A. at 21.  Petitioner suggests his sentence is distinguishable from others upheld by the Supreme Court because the offense upon which petitioner was convicted was a mere drug possession offense. Id. at 22.

In Lockyer, the Supreme Court upheld a California defendant's sentence of two consecutive prison terms of 25-years-to-life imposed after the defendant was convicted for stealing approximately $150 in videotapes.  538 U.S. at 77.  The Lockyer defendant's criminal past is similar to that of petitioner's.  Id. at 66-68.  Therefore, the court does not find that petitioner has established the state Court of Appeal's affirming petitioner's sentence resulted in a

1   decision contrary to or involving an unreasonable application of clearly established Supreme

2   Court precedent; it would not be reasonable to categorize the <u>Lockyer</u> defendant's crime as more

3   worthy of harsh sentence than petitioner's.  Accordingly, plaintiff's assertion that his sentence is

4   disproportionate to his offense must be rejected in light of 28 U.S.C. § 2254(d).

5   VI. <u>Drug Treatment Instead Of Prison</u>

6         Petitioner's final claim is that the Fourteenth Amendment requires petitioner to be

7   re-sentenced under a more lenient sentencing law enacted after petitioner was convicted and

8   sentenced.  In petitioner's construction, this law would entitle petitioner to drug treatment rather

9   than incarceration for his offenses.

10         The only state court opinion addressing this claim, by the Superior Court of

11   Sacramento County, found even if the new law in question, Proposition 36, were to be applied

12   retroactively to those who had been convicted and sentenced of qualifying offenses before the

13   proposition was enacted, its provisions would not apply to petitioner:

> Several months after Proposition 36 became effective, petitioner has filed the instant petition for writ of habeas corpus, claiming that equal protection principles require that Proposition 36 be applied retroactively to the judgment in Sacramento Superior Court Case No. 98F08395. . .
>
> . . . [E]ven if Proposition 36 could be applied retroactively to petitioner's case, petitioner would not be eligible for Proposition 36 treatment.
>
> Penal Code § 1210.1(b)(1) provides that a defendant is ineligible for Proposition 36 treatment, if the "defendant . . . previously has been convicted of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than a nonviolent drug possession offense, or (B) a misdemeanor conviction involving physical injury or the threat of physical injury to another person."
>
> In Case No. 98F08395, two "strike priors" were found true, meaning that petitioner has at least two serious and/or violent felony prior convictions.  Further, the probation report for Case No. 98F08395 indicates that petitioner suffered a May 17, 1988 prior

1  conviction for felony first degree burglary (Penal Code § 459), for

2  which he was committed to state prison for 9 years; that he was
   released from prison on parole from that offense on May 14, 1994,
   then returned to prison on a parole violation on November 7, 1996,

3  then paroled again on July 15, 1997, then returned to custody for

4  another parole violation on September 19, 1997, then paroled and
   discharged on May 14, 1998, then committed the offenses in Case

5  No. 98F08395 on September 20, 1998.  As such, petitioner has
   been convicted of more than one serious/violent felony, and has

6  not been free from prison custody for the five-year period that
   immediately preceded the offenses in Case No. 98F08395.  He

7  therefore would be ineligible for the Proposition 36 treatment,
   pursuant to Penal Code § 1210.1(b)(1), even if Proposition 36 were

8  to be applied retroactively to Case No. 98F08395.

9  Lodged Document, Order in Case No. 02F03776 (filed 5/9/200) at 1-2.

10        Of course, this court cannot disturb a state court's interpretation of its own

11  sentencing laws.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  But petitioner asserts that the

12  provisions of Proposition 36, identified above, which make petitioner ineligible for drug

13  treatment violate his Fourteenth Amendment rights.[5]

14        The Fourteenth Amendment requires that a state give equal protection of its laws

15  to all persons within its jurisdiction.  City of Cleburne, Texas v. Cleburne Living Center,

16  473 U.S. 432, 439 (1985).  Essentially, this means that states must treat all similarly situated

17  persons alike.  Id.  Petitioner's Fourteenth Amendment claim fails in this action because he is not

18  similarly situated to those who do receive drug treatment under Proposition 36; he has spent time

19  in prison within the five years preceding the convictions at issue in this action.  See Ralbovsky v.

20  Kane, 407 F. Supp. 2d 1142, 1161 (C. D. Cal. 2005) (petitioner's equal protection claim denied,

21  in part, because petitioner was not similarly situated with prisoners who had less extensive

22  criminal records).  Furthermore, petitioner's equal protection claim fails because states have a

23  legitimate interest in dealing more harshly with recidivists.  Texas v. McCullough, 475 U.S. 134,

24  144 (1986).  Petitioner's claim concerning Proposition 36 must be rejected.

25 ─────────────────

26     [5] Petitioner does not challenge the findings of fact made by the Superior Court of
   Sacramento County with respect to petitioner's criminal record.

1   For all the foregoing reasons, the court will recommend that petitioner's

2   application for writ of habeas corpus be denied.

3   Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

4   writ of habeas corpus be denied.

5   These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED:  September 27, 2007.

14

15

16  U.S. MAGISTRATE JUDGE

17

18

19  1 & 2

20  dey0883.157

21

22

23

24

25

26

26